IN THE UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| OMNI SPECIALIZED, LLC ) | No.   17-80801 |
| ) | |
| Debtor. ) | |

**JOINT EMERGENCY MOTION OF CROSSROADS EQUIPMENT LEASE AND FINANCE, LLC, P2 LEASING, INC., AND TENNANT LOGISTICS, INC. FOR EXTRAORDINARY RELIEF IN THE FORM OF ADEQUATE PROTECTION**

COME NOW Creditors Crossroads Equipment Lease and Finance, LLC (**"Crossroads"**), by and through its attorneys, Brooks Law Firm P.C.; and P2 Leasing Inc. (**"P2"**) and Tennant Logistics, Inc. (**"Tennant"** or together with Crossroads and P2, the **"Movants"**), by and through their attorneys, Katz Nowinski P.C. and Churchill & Churchill, P.C. seeking emergency and extraordinary relief, as specifically set forth below, necessary to preserve the value of their assets and avoid irreparable harm:

1. Omni Specialized, LLC (**"Omni"**) filed a Petition for Chapter 11 Bankruptcy Relief on Monday, May 29, 2017.

2. Movants formerly leased to Omni essentially all of Omni's tractors and trailers. As set forth in the emergency motions for relief from stay filed June 1, 2017 (docket nos. 8, 9, and 10), Movants believe they each separately terminated their respective leases with Omni prior to Omni's bankruptcy filing. Movants incorporate all of the allegations contained in their respective stay relief motions into this Motion by reference.

3. Omni remains in possession of virtually all of the equipment formerly leased to Omni by Movants.

4. As of June 1, 2017, no motion to use cash collateral, or any other first-day motion, had been filed by Omni.

5. Upon information and belief, Omni failed to make its ordinary payroll on June 1, 2017.

6. On June 1, 2017, a significant number of Omni employees contacted companies owned by or related to Tennant to inquire about future employment. Some of those employees indicated that they were immediately terminating their employment with Omni.

7. It is well-known in the trucking industry that in the event a trucking company fails to make payroll, its drivers often fear that the gas cards they rely upon to refuel their vehicles will also be dishonored, leaving them stranded at whatever location they are at when their gas cards are refused. *See, e.g.* http://www.peoplesworld.org/article/arrow-truck-drivers-abandoned-by-company-but-not-by-fellow-drivers/ (last visited June 1, 2017) (describing the plight of drivers employed by Arrow Trucking in December 2009). This type of panic can develop within hours of a missed payroll or other negative financial event.

8. Because Omni has failed to bring a motion to use cash collateral or incur debt, there is no reason to believe the companies that finance their gasoline purchases will continue to do so now that payroll has been missed. Upon information and belief, Omni no longer has credit or financing for purchases of gasoline for the fleet of truck tractors and trailer.

9. Omni also provided financial statements to Crossroads prepetition, evidencing its failure to pay more than three quarters of a million dollars in trust fund payroll taxes in the months preceding its bankruptcy filing.

10. Payroll, trust fund payroll taxes, and similar obligations are generally the last items a failing business ceases to pay before giving up all hope of reorganization.

11. The facts demonstrate the extreme financial distress of the debtor, and the extreme, imminent, and profound risk that the debtor has placed on the Movants. By failing to make payroll, Omni has created an unacceptable risk that its drivers will quit working for the company, abandon the Movants' equipment, and leave the Movants with the nearly impossible and financially crippling task of recovering their collateral from diverse locations across the country.

12. There is precedent for very situation as to the current president of Omni, Thomas J. Witt. Mr. Witt was the president of Arrow Trucking in 2009 when the company failed financially. Drivers abandoned their tractors and trailers, and some drivers did not have enough fuel to return to Arrow. The same Thomas J. Witt is the current president of Omni. As stated in the Tulsa World News, in 2009 the Department of Transportation issued an emergency order directing Arrow "not to permit its drivers to abandon Arrow CMV (commercial motor vehicles) on any public highway or to leave vehicles on which hazardous materials are being transported unattended or parked in violation of federal regulations." Further, the emergency order directed management and officers "to direct Arrow employees or other responsible and qualified operators to drive Arrow CMVs (commercial motor vehicles and cargo) to appropriate facilities for the safe and orderly transfer of responsibility and control over the vehicles." See attached Exhibit A.

13. It is imperative that all Omni drivers are immediately assured that they and the subject equipment will not be stranded despite Omni's financial paralysis, and that drivers will be compensated to return all equipment to Omni's terminal, despite the Debtor's apparent inability to make payroll.

14. Movants may be willing to make a DIP loan if necessary to ensure that all equipment is returned to Omni's Colona, IL terminal, to await determination of rightful possession, but negotiations and approval of such a DIP loan cannot occur quickly enough if drivers are not immediately reassured and instructed to return their equipment to Omni's terminal.

15. As much as abandonment of equipment would harm Movants, it would also severely damage the Omni estate, because any abandoned goods may give rise to administrative claims by Omni customers. Abandonment must be avoided at all costs, for the good of all parties to the case.

16. Omni has the technical capabilities to communicate with its entire fleet of operators on the road.

17. Omni uses a GPS tracking system called OmniTracs. This is a satellite and/or terrestrial tracking and communication system that allows position and location tracking.

18. The software used for dispatch, tracking, and operations is called TMW. It logs all dispatch points, and last location of equipment, as well as load information and all driver data. This system would provide a history of equipment location and usage that could be used to immediately locate Movants' equipment.

19. Upon terminating their leases on May 26, 2017, Movants requested access to Omni's dispatch software to allow for efficient location and surrender of the leased equipment. Omni failed and refused to provide this reasonably requested accommodation.

20. Companies controlled by Tennant provide Information Technology support to Omni. With the Court's permission and at Tennant's direction, Omni's software could be

accessed by Tennant or its agents to allow Movants to know the most recent locations and load statuses of their equipment.

21.     Movants desire to inform the entire driver fleet that they must honor their commitments to Omni by returning the equipment in good condition to Omni's terminal, despite Omni's apparent inability to pay them to do so, as a prerequisite to any future employment by any Tennant- or Crossroads-related company, should Omni fail to survive their current dire financial condition.

22.     Because Tennant and its related entities are known in the trucking industry, some current employees have begun to contact Tennant and its related entities to inquire about future employment opportunities. To date, Tennant-related entities have fielded such calls, and informed inquirers that the inquirers owe a duty to their current employer, but that if such employment should terminate, there may be employment opportunities available, but only if equipment currently being used in the employ of Omni is returned to Omni's Colona terminal.

23.     Movants are also aware that upon news of Omni's bankruptcy filing, unrelated trucking companies began to contact Omni drivers with offers of future employment. Movants desire to compete with those unrelated trucking companies by soliciting even non-inquiring drivers, and inform Omni drivers that future employment opportunities may also exist with Tennant- or Crossroads-related companies, but fear that doing so without court approval may be frowned upon.

## LEGAL ARGUMENT

11 U.S.C. §105 grants the court authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. …" Although the Bankruptcy Code provides for an automatic stay that stays many actions that creditors might

otherwise take in an attempt to protect themselves from a debtor's demise, the code also provides that stayed creditors should be adequately protected.

Because of the severity of Omni's financial distress, and the acute risk placed upon Movants in the event any Omni drivers abandon the equipment, Movants feel compelled to request: (1) access to Omni's dispatch equipment and software to understand the location of Movants' equipment; and (2) an opportunity to communicate with Omni drivers regarding the drivers' obligations to complete their current loads for Omni, the Movants potential willingness to compensate them for doing so in the event Omni cannot, and the Movants' potential interest in employing the drivers should Omni's reorganization efforts fail quickly.

WHEREFORE Crossroads, T2 and Tennant pray that this Court, on such notice and hearing as it may direct:

  A. Enter an Order authorizing Movants or their agents to access Omni's software to identify the location, load status, and driver information associated with their equipment; and,

  B. Order Omni to cooperate in sharing that information; and

  C. Allow Movants or their agents to contact Omni's drivers to reassure them that if they comply with their commitments to Omni to complete their current loads and return the Movants' equipment to Omni's terminal in Colona, IL, Movants may be willing to ensure that they are paid for such efforts, and that future employment opportunities with Movants or their subsidiaries may be available in the event of Omni's demise; and

  D. Grants such relief as may be equitable in the premises.

Respectfully submitted,

/s/ Jeffrey C. McDaniel
Brooks Law Firm, P.C.
3725 Blackhawk Road, Suite 200
Rock Island, IL 61201
Telephone: (309) 786-4900
Facsimile: (309) 786-4940
jcm@brookslawfirmpc.com
**ATTORNEY FOR CROSSROADS EQUPMENT LEASE AND FINANCE, LLC**

/s/ Dale G. Haake
Katz Nowinski P.C.
1000 36th Avenue
Moline, IL 61265
Telephone: (309) 797-3000
Facsimile: (309) 797-3330
dhaake@katzlawfirm.com
**ATTORNEY FOR TENNANT LOGISTICS, INC. and P2 LEASING, INC.**

/s/ Mark D. Churchill
Churchill and Churchill, P.C.
1610 5th Avenue
Moline, IL 61265
Telephone: (309) 539-4049
Facsimile: (309) 762-4690
mchurchill@churchillform.com
**ATTORNEY FOR TENNANT LOGISTICS, INC. and P2 LEASING, INC.**

# CERTIFICATE OF SERVICE

      The undersigned certifies that a copy of the foregoing instrument was sent to the below-listed individuals by electronic means or by enclosing the same in an envelope in a U.S. Post Office mailbox in Rock Island, Illinois on the 2nd day of June 2017.

                                                    /s/ Jeffrey C. McDaniel

**VIA ORDINARY MAIL**
Omni Specialized, LLC
20812 E. 550th Street
Colona, IL 61241


**VIA ELECTRONIC MEANS**
Gregory Otsuka
Attorney for Debtors
gotsuka@hjlawfirm.com

U.S. Bankruptcy Trustee's Office
Sabrina.m.petesch@usdoj.gov